

FILED IN OPEN COURT

5/30/2023

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 3:23-cr- 57 - BJD-LLL

JONATHAN CORBETT COSIE

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, JONATHAN CORBETT COSIE, and the attorneys for the defendant, James P. Hill, Esq. and Jesse Dreicer, Esq., mutually agree as follows:

### A.   Particularized Terms

#### 1.   Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and Two of the Information.  Counts One and Two charge the defendant with introducing misbranded drugs into interstate commerce with the intent to defraud and mislead, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2).

#### 2.   Maximum Penalties

Counts One and Two each carry a maximum sentence of three years' imprisonment, a fine of not more than $250,000, a term of supervised release of not more than one year, and a mandatory special assessment of $100.  A violation of

Defendant's Initials _____

AF Approval _MT_

supervised release carries an additional term of not more than two years' imprisonment, and an additional term of supervised release may be imposed.

The cumulative maximum penalty is a term of imprisonment of not more than six years, a fine of not more than $500,000, or both imprisonment and a fine, a term of supervised release of not more than one year, and a mandatory special assessment of $200. A violation of supervised release carries an additional term of not more than four years' imprisonment, and an additional term of supervised release may be imposed.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3.    **Elements of the Offense**

The defendant acknowledges understanding the nature and elements of the offense with which the defendant has been charged and to which the defendant is pleading guilty. The elements of Counts One and Two are:

| | |
|---|---|
| First: | The defendant introduced or caused the introduction into interstate commerce or delivery for introduction into interstate commerce of a drug; |
| Second: | The drug was misbranded at the time of its introduction or delivery for introduction into interstate commerce; and |
| Third: | The defendant acted with the intent to defraud or mislead. |

Defendant's Initials _____              2

4.    **Indictment Waiver**

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5.    **No Further Charges**

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.    **Acceptance of Responsibility - Three Levels**

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this plea agreement, including, but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to

Defendant's Initials [initials]                 3

USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7.    **Cooperation – Substantial Assistance to Be Considered**

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to

Defendant's Initials _____                    4

consider whether such cooperation qualifies as "substantial assistance" in accordance
with the policy of the United States Attorney for the Middle District of Florida,
warranting the filing of a motion for a reduction of sentence within one year of the
imposition of sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the
defendant understands that the determination as to whether "substantial assistance"
has been provided or what type of motion related thereto will be filed, if any, rests
solely with the United States Attorney for the Middle District of Florida, and the
defendant agrees that defendant cannot and will not challenge that determination,
whether by appeal, collateral attack, or otherwise.

8.    **Use of Information – Section 1B1.8**

Pursuant to USSG § 1B1.8(a), the United States agrees that no self-
incriminating information which the defendant may provide during the course of
defendant's cooperation and pursuant to this agreement shall be used in determining
the applicable sentencing guideline range, subject to the restrictions and limitations
set forth in USSG § 1B1.8(b).

9.    **Cooperation – Responsibilities of the Parties**

a.    The government will make known to the Court and other
relevant authorities the nature and extent of defendant's cooperation and any other
mitigating circumstances indicative of the defendant's rehabilitative intent by
assuming the fundamental civic duty of reporting crime.  However, the defendant
understands that the government can make no representation that the Court will

Defendant's Initials _____                    5

impose a lesser sentence solely on account of, or in consideration of, such cooperation.

      b.     It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

      (1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

      (2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby

Defendant's Initials _____       6

agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)    The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses. [1]

(4)    The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)    The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

Defendant's Initials _____        7

10.    **Forfeiture of Assets**

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 21 U.S.C. § 334 and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing.  To that end, the defendant agrees to

Defendant's Initials _____                    8

make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be

Defendant's Initials _____                    9

found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

      The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

**B.**    **Standard Terms and Conditions**

    **1.**    **Restitution, Special Assessment and Fine**

      The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, **shall** order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)),

Defendant's Initials _____      10

including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. he defendant understands that this agreement imposes no limitation as to fine.

**2.**   **Supervised Release**

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

**3.**   **Immigration Consequences of Pleading Guilty**

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

**4.**   **Sentencing Information**

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or

Defendant's Initials ____        11

defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

**5.** **Financial Disclosures**

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this plea agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant

Defendant's Initials _____                    12

expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

**6.   Sentencing Recommendations**

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

**7.   Defendant's Waiver of Right to Appeal the Sentence**

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to

Defendant's Initials _____                    13

appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

**8.** <u>**Middle District of Florida Agreement**</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

**9.** <u>**Filing of Agreement**</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

Defendant's Initials _____          14

10.   **Voluntariness**

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be

Defendant's Initials _____                    15

adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

**11.    Factual Basis**

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

**12.    Entire Agreement**

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials                     16

**13. Certification**

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 16th day of MARCH, 2023.

JONATHAN CORBETT COSIE
Defendant

ROGER B. HANDBERG
United States Attorney

DAVID B. MESROBIAN
Assistant United States Attorney

JAMES P. HILL, ESQ.
JESSE DREICER, ESQ.
Attorneys for Defendant

KELLY S. KARASE
Assistant United States Attorney
Deputy Chief, Jacksonville Division

Defendant's Initials _____          17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 3:23-cr- 5 7 - B J D - L L L

JONATHAN CORBETT COSIE

## PERSONALIZATION OF ELEMENTS

Count One

1.     On or about April 9, 2019, did you introduce or cause the introduction

into interstate commerce or delivery for introduction into interstate commerce of a

drug labeled as Chorionic Gonadotrophin Injection I.P. (Human Chorionic

Gonadotrophin) Ovidac® 5K HCG 5000 IU, that is, did you ship this drug or cause

it to be shipped from Florida to Texas?

2.     Was the Chorionic Gonadotrophin Injection I.P. (Human Chorionic

Gonadotrophin) Ovidac® 5K HCG 5000 IU misbranded at the time of its

introduction or delivery for introduction into interstate commerce?

3.     Did you act with the intent to defraud or mislead?

Count Two

1.     On or about April 18, 2020, did you introduce or cause the introduction

into interstate commerce or delivery for introduction into interstate commerce of a

drug labeled as Ultra$^{HP}$ HCG Human Chorionic Gonadotropin for Injection IP

Defendant's Initials _____                    18

5000IU, that is, did you ship this drug or cause it to be shipped from Florida to Alabama?

2.    Was the Ultra[HP] HCG Human Chorionic Gonadotropin for Injection IP 5000IU misbranded at the time of its introduction or delivery for introduction into interstate commerce?

3.    Did you act with the intent to defraud or mislead?



Defendant's Initials _____                    19

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 3:23-cr-57-BJD-LLL

JONATHAN CORBETT COSIE

## FACTUAL BASIS

### Background of FDCA and HCG

The Federal Food, Drug, and Cosmetic Act ("FDCA") prohibits the
introduction or delivery for introduction into interstate commerce of any drug that is
misbranded. The U.S. Food and Drug Administration ("FDA") is the federal
agency charged with the responsibility of protecting the health and safety of the
American public by enforcing the FDCA. Among other responsibilities, the FDA
enforces laws and regulations intended to ensure that drugs for human and animal
use are safe and effective for their intended uses and bear labeling that contains true
and accurate information.

Under the FDCA, "drugs" are defined as, among other things, articles
intended for use in the diagnosis, cure, mitigation, treatment, or prevention of
disease in man or other animals; articles (other than food) intended to affect the
structure or any function of the body of man or other animals; and articles intended
for use as a component of any such articles. 21 U.S.C. § 321(g)(1). "Intended use"
refers to the objective intent of the persons legally responsible for labeling the product
and was determined by such persons' expressions or may be shown by the

Defendant's Initials _____                20

circumstances surrounding the distribution of the article, labeling claims, advertising matter, or oral or written statements by such persons or their representatives. 21 C.F.R. § 201.128. A "new drug" is defined as any drug "the composition of which is such that such drug was not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof." 21 U.S.C. § 321(p)(1).

A drug is misbranded under the FDCA if its labeling is false or misleading in any particular, or if its labeling fails to bear "adequate directions for use" unless it complies with regulations promulgated by FDA exempting it from that requirement. 21 U.S.C. §§ 352(a), 352(f)(1). "Adequate directions for use" means directions under which a layperson could use a drug safely for the purposes for which it was intended. 21 C.F.R. § 201.5. "Label" means a display of written, printed, or graphic matter upon the immediate container of any article. 21 U.S.C. § 321(k). The term "labeling" is defined as all labels and other printed or graphic matter upon any article or any of its containers or wrappers, or accompanying such article. 21 U.S.C. § 321(m).

Drugs are also "misbranded" under the FDCA if any word, statement, or other information, required to appear on the drug's label or labeling, is not prominently placed thereon. 21 U.S.C. § 352(c). The label of a drug must include the proprietary and established names of the drug, the identifying lot or control

Defendant's Initials _____            21

number, and the name of the manufacturer, packer, or distributor. *See* 21 U.S.C. §
352(e); 21 C.F.R. § 201.10(i)(1).

Under the FDCA, a "prescription drug" is any drug intended for use in
humans that, because of its toxicity or other potentiality for harmful effect, or the
method of its use, or the collateral measures necessary for its use, was not safe for use
except under the supervision of a practitioner licensed by law to administer such
drug; or was limited by an approved application under 21 U.S.C. § 355 for use under
the professional supervision of a practitioner licensed by law to administer such drug.
21 U.S.C. § 353(b)(1).  Because a prescription drug, by definition, is safe for use only
under the supervision of a licensed practitioner, there are no directions that could
enable a layperson to use a prescription drug safely.  Therefore, adequate directions
for use could not be written for a prescription drug.  Accordingly, a prescription drug
is misbranded if it does not comply with FDA regulations that exempt prescription
drugs from the adequate directions for use provision.  For a drug that was a "new
drug" within the meaning of 21 U.S.C. § 321(p), compliance with such regulations
requires that the drug be approved by FDA for its intended use and that its labeling
conform to the terms of that approval.  21 C.F.R. § 201.115; 21 C.F.R. §
201.100(c)(2).

Human chorionic gonadotropin ("HCG") is a hormone produced by
the placenta during pregnancy.  FDA has approved several HCG-containing
prescription drugs for the treatment of female infertility and for other medical

Defendant's Initials [signature]          22

conditions.  FDA has not approved any HCG-containing products for weight loss, nor for any purpose without a prescription.

### Interception of Drug Shipments

In March 2020, U.S. Customs and Border Protection ("CBP") seized multiple packages at the John Fitzgerald Kennedy mail facility located in New York. These packages originated from India or Germany, and were each addressed to: "Jon Cosi, 6271 Saint Augustine Road, Suite 24-1183, Jacksonville, Florida 32217." CBP Officers conducted inspections of the packages, and determined that, in total, they contained hundreds of boxed vials labeled as either "Chorionic Gonadotrophin Injection I.P. (Human Chorionic Gonadotrophin) Ovidac 5K HCG 5000 I.U." (hereinafter, "Ovidac HCG") or "Chorionic Gonadotrophin Injection I.P. 5000 I.U. (Human Chorionic Gonadotrophin) ZyhCG HP" (hereinafter, "ZyhCG HCG"). These vials all contained prescription drugs manufactured and originally marketed for sale in non-U.S. countries.

The investigation was referred to the FDA Office of Criminal Investigations ("FDA-OCI").  FDA-OCI agents determined that the destination address for the packages was a mailbox located at a virtual mailbox center business in Jacksonville in the Middle District of Florida.  Through documents obtained from the business, agents learned that the mailbox had been rented by the defendant, JONATHAN CORBETT COSIE.  The owner of the business advised that COSIE received numerous parcels from overseas, including from India, many of which were too large to fit in a mailbox.  The owner further advised that a female, identified as

Defendant's Initials _____                      23

COSIE's fiancée V.A., had also picked up packages from the business sent to that mailbox. The owner provided email correspondence he exchanged with COSIE, who used the address "jnash@verticalmail.net".

### COSIE and HCGRX

FDA-OCI learned that COSIE was at that time a resident of Jacksonville, and that he had owned and operated several businesses including HCGRX LLC a/k/a Health Conscious Group Rx LLC ("HCGRX"). COSIE incorporated HCGRX in the state of Florida in 2016, according to Department of State records. While HCGRX was an active corporation, COSIE used a variety of corporate addresses, including: a residence in Chesterfield, Virginia, which belonged to his father; a residence in Delray Beach, Florida, which belonged to his mother; and a number of virtual mailboxes in New York, Oregon, Washington, South Carolina, and Florida. COSIE also listed the names of several relatives and friends as managers or members of HCGRX in filings. In 2018, V.A. was listed as a manager of HCGRX.

FDA-OCI agents identified a website associated with the business, www.HCGRX.com. (the "Website"). According to the Website, HCGRX was a "national distributor of competition quality weight loss, body building and sports supplements at deep discount prices." Various injectable HCG drugs were advertised on the Website, including Ovidac HCG, ZyhCG HCG, and "Ultra$^{HP}$ HCG Human Chorionic Gonadotropin for Injection IP 5000IU" (hereinafter, "UltraHCG"). The Website specifically marketed its HCG products as weight loss

Defendant's Initials _____          24

supplements. The Website also advertised products for the treatment of erectile dysfunction, which were described as generic versions of the prescription drugs Viagra (sildenafil) and Cialis (tadalafil). The Website claimed that "Our HCG is produced in Europe or Asia, in ISO Certified and government controlled facilities with highest production standards," and stated that HCGRX would allow customers to avoid having to obtain a prescription from a medical professional to order products containing HCG. The Website falsely claimed to customers that it was "cooperating with international pharmacies that are shipping your order out[,]" as government agents learned that HCGRX products were being illegally manufactured and shipped from COSIE's own residence and other locations.

<u>Undercover Purchase</u>

On April 1, 2020, FDA-OCI conducted an online undercover purchase from the Website of the products identified as "Two Months HCG 5000 IU No Kit," "28 Day HCG 5000 IU Kit $99," "Generic Cialis (Tadalafil 20mg) Premium Quality Formula," "Generic Viagra (Sildenafil Citrate 100mg)," and "Lipotropic Super M.I.C. Fat Burner Vitamin B-Complex with L-Carnitine & L-Argenine" (hereinafter, "Super M.I.C."). The agent conducting the undercover purchase received emails containing instructions relating to this order from info@hcgrx.com and jnash@verticalmail.net. The agent was not consulted by a licensed practitioner, asked to complete a questionnaire, or asked to provide a prescription for the order.

On April 15, 2020, FDA-OCI received a package containing the order at an undercover address located in the Middle District of Florida. The label had

Defendant's Initials _____          25

been printed on an inkjet printer, and reflected a return address in New York, NY. The package contained vials of a product labeled "Ovidac HCG" (*i.e.*, an injectable HCG drug); generic tadalafil tablets; generic sildenafil tablets; and "Super M.I.C." The package also contained syringes, alcohol wipes/pads, and a vial labeled "Bacteriostatic Water For Injection, USP" (hereinafter, "Bacteriostatic Water"), which was included as a diluent for the HCG so it could be injected. A document containing instructions for how to dilute and inject the HCG was included with this order, along with documents advertising various HCGRX products, all of which had the HCGRX logo printed thereon. Upon review of the product vial labels for the Bacteriostatic Water and the Ovidac HCG, FDA-OCI determined that they were counterfeit labels printed on an inkjet printer, which was subsequently confirmed by the FDA laboratory. The label for the Bacteriostatic Water contained the statements "Rx only," "NDC 63323-249-30," "For Drug Diluent Use Only," and "Water for injection." An FDA database search of the National Drug Code ("NDC") number, 63323-249-30, listed on this label revealed no record to be found for this NDC. The counterfeit product vial label for the Ovidac HCG contained the statements "Rx," "Dosage: As directed by the Physician," and "SCHEDULE H PRESCRIPTION DRUG-CAUTION Not to be sold by retail without the prescription of a Registered Medical Practitioner." The label for the "Ovidac HCG" also bore the name "Bayer Zydus Pharma", which, according to online information, is an Indian pharmaceutical drug manufacturer of products that include one named Ovidac

Defendant's Initials _____        26

HCG. Subsequently, the FDA lab analyzed the Ovidac HCG obtained through the undercover purchase and found that it did not actually contain HCG.

FDA database record searches confirmed that HCGRX was not registered with the FDA as a drug establishment, and that there were no approved FDA applications on file for the Ovidac HCG, ZyhCG HCG, Ultra HCG, generic Cialis, generic Viagra, or Super M.I.C. products sold on the HCGRX website. FDA-OCI agents also determined that COSIE listed some of the same misbranded HCG "weight loss" drug products for sale on websites such as eBay.

FDA-OCI obtained records associated with the return address on the package received in connection with the undercover purchase, which was a mailbox located at a virtual mailbox center business in New York. The records indicated that the applicant for the mailbox was JONATHAN COSIE, and that COSIE had received a number of customer returns of HCGRX products at this address.

<u>Search Warrant</u>

In May 2020, FDA-OCI conducted trash pulls at the residence in Jacksonville shared by COSIE and V.A. Among the discarded items were computer-generated and inkjet-printed adhesive vial labels for the Bacteriostatic Water, Ovidac HCG, and Ultra HCG products. The printed adhesive vial labels for Ovidac HCG and Bacteriostatic Water obtained through the trash pull appeared identical to those on the vials of Ovidac HCG and Bacteriostatic Water obtained through the undercover purchase. The printed adhesive vial labels for the Ultra HCG contained the statements "Dosage: As directed by a qualified medical practitioner" and

Defendant's Initials _____               27

"SCHEDULE H DRUG- To be sold by a Registered Medical Professional Only."
Additionally, agents found shipping labels addressed from "Shipping Manager, 1121
Broadway, Brooklyn, NY 10021" to different recipients located in the states of
Pennsylvania and Nevada, an HCGRX packing slip, addressed from HCGRX, 1121
Broadway, Brooklyn, NY 10021 to one of the same recipients listed on a shipping
label, and various other items of evidence which confirmed that www.HCGRX.com
orders were being processed, filled, labeled, and shipped from the residence.

On June 4, 2020, FDA-OCI agents executed a federal search warrant
on COSIE and V.A.'s residence in Jacksonville for evidence relating to the unlawful
distribution of misbranded drugs, among other offenses. Both COSIE and V.A. were
present at the time of the search. During the search, agents located and seized vials
labeled as Ovidac HCG, UltraHCG, and Bacteriostatic Water, boxes of the sildenafil
and tadalafil products marketed on the Website, numerous labeled and unlabeled
empty vials, marketing materials for various HCG drugs, an inkjet printer, HCG
product and shipping labels, syringes, and numerous other items related to the
HCGRX business. Agents also seized invoices, customer lists, and other documents
and records related to shipments of HCG products by COSIE to HCGRX customers.

Identified Transactions

FDA-OCI agents reviewed the records obtained pursuant to the search
warrant, as well as records obtained from various financial services and commercial
companies used by COSIE to conduct transactions and receive payments related to
HCGRX sales. Agents identified numerous transactions in which COSIE caused the

Defendant's Initials _____                 28

introduction into interstate commerce of drugs which were misbranded because, among other things, COSIE created counterfeit labels to place on the vials which contained false and misleading information, and the drugs' labeling lacked adequate directions for use due to their being prescription drugs knowingly and intentionally sold without a prescription or the supervision of a licensed practitioner.  These transactions included:

- On or about April 9, 2019, COSIE shipped vials of the Ovidac HCG drug product from Florida to Texas via the United States Postal Service ("USPS").  The shipment was sent to a customer who ordered the Ovidac HCG product via COSIE's listing on eBay, and who paid COSIE $149 via PayPal.

- On or about April 18, 2020, COSIE shipped vials of the UltraHCG drug product from Florida to Alabama via USPS. The shipment was sent to a customer who ordered the UltraHCG product through the Website, and who paid COSIE $150.50 via CashApp.

Subsequent Investigation

In October 2020, FDA-OCI learned that the Virginia State Police was engaged in a longterm investigation of COSIE for distribution of illegal steroids. According to the lead investigator, the Virginia State Police executed a search warrant in April 2019 at the Virginia residence of COSIE's father, where COSIE was staying at the time.  During that search, the Virginia investigators found and seized

Defendant's Initials _____                29

counterfeit labels for Ovidac HCG and Bacteriostatic Water, as well as various HCGRX-related labels and shipping materials. The Virginia investigators also seized a fake Alaska driver's license in the name "Richard Robert Petrick" which bore COSIE's photograph. The address listed on the license was a virtual office center in Anchorage, Alaska.

Also in October 2020, FDA-OCI interviewed A.A., a resident of Virginia. A.A. met COSIE through an online dating service in 2017. Subsequently, in 2019, COSIE solicited her to invest in his "weight loss business," HCGRX. A.A. advised that COSIE showed her the Website, and financial statements which indicated he was making between $30,000 and $40,000 monthly off of the business. A.A. agreed to invest $30,000, and opened a business bank account in the name "HC Group LLC" into which she deposited the funds for COSIE's use. COSIE told A.A. that he used a number of aliases in operating HCGRX, including "Jon Nash," "John Nash," and "Jon Corbett." A.A. advised that COSIE showed her a fake Alaska driver's license at one time with the name "Jon Corbett." A.A. also received emails from COSIE regarding the investment, in which he used the aliases "Jon Nash" and "John Nash." A.A. never received her investment back or the returns promised by COSIE.

In June 2021, FDA-OCI interviewed C.W., who had purchased HCGRX and the Website from COSIE. C.W. advised that COSIE contacted him in December 2020 (several months after the execution of the search warrant), and offered to sell the HCGRX business and the Website. COSIE told C.W. that he was

Defendant's Initials _____                    30

moving into another business venture which was occupying his time, and needed to sell HCGRX. COSIE did not mention the FDA-OCI investigation or the search warrant, and explicitly denied that there were any concerns about the legality of the business. C.W. agreed to purchase the business for $20,000, but became concerned when he noticed COSIE use the alias name "Jon Corbett" and a virtual mailbox address in his correspondence. C.W. also learned about customer complaints regarding shipments of incorrect products and failures to reimburse customers by COSIE.

In sum, the investigation (through, *inter alia*, the seized imported foreign drug products, undercover purchase, trash reviews, interviews, the search conducted pursuant to the warrant, and laboratory analysis) revealed that, in contrast to the false statements to consumers on HCGRX's website and its product labels, COSIE had actually ordered HCG and other products from various sources (both foreign and domestic), made counterfeit product labels with an inkjet printer (e.g., to remove "Rx Only" marking and foreign labeling) to place on his own vials, and mailed these vialed products through his own mailing accounts to HCGRX customers.

Total Proceeds

From October 28, 2017 through December 24, 2020, COSIE received approximately $626,202.77 in proceeds from the distribution of misbranded drugs, and $20,000.00 for the sale of HCGRX.



Defendant's Initials _____                    31